FILED

2014 Dec-01  AM 09:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHERRY BRIDGES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **2:14-cv-690-AKK** |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | | |

## MEMORANDUM OPINION

Plaintiff Sherry Bridges ("Bridges") brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standard and that her decision—which has become the decision of the Commissioner—is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

### I. Procedural History

Bridges filed her application for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income on January 31, 2011, alleging an

amended disability onset date of January 28, 2011 due to congestive heart failure, sleep apnea, hypertension, and tendonitis. (R. 41, 112, 128, 150). After the SSA denied her application, Bridges requested a hearing before an ALJ. (R. 61-62, 73). The ALJ subsequently denied Bridges's claim, (R. 19-25), which became the final decision of the Commissioner when the Appeals Council refused to grant review, (R. 1-4). Bridges then filed this action pursuant to § 205(g) of the Act, 42 U.S.C. § 205(g), on April 4, 2014. Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence."  *See id.*  (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i)(I)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. § 404.1520(a)-(f). Specifically, the Commissioner must determine in sequence:

(1)     whether the claimant is currently unemployed;

(2)     whether the claimant has a severe impairment;

(3)     whether the impairment meets or equals one listed by the Secretary;

(4)     whether the claimant is unable to perform his or her past work; and

(5)     whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)-(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must meet additional criteria. In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[1]

*Id*. However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, *neither requires objective proof of the pain itself*. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard *a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added). Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223. Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence

*Hale*, 831 F.2d at 1012.  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability.  *Id*.

### IV. The ALJ's Decision

In performing the five step analysis, the ALJ found that Bridges had not engaged in substantial gainful activity since January 28, 2011, and therefore met Step One. (R. 21). Next, the ALJ found that Bridges satisfied Step Two because she suffered from the severe impairments of "congestive heart failure, chronic kidney disease, obstructive sleep apnea, obesity, and hypertension." *Id*. The ALJ then proceeded to the next step and found that Bridges did not satisfy Step Three since she "[did] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 22). Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, she proceeded to Step Four, where she determined that Bridges has the residual functional capacity (RFC) to "perform light work . . . except without concentrated exposure to extreme cold, heat,

humidity, fumes, odors, etc. She can occasionally kneel and crawl." (R. 22). In light of Bridges's RFC, the ALJ determined that Bridges "is capable of performing past relevant work as a jailer and caseworker." (R. 25). Therefore, the ALJ found that Bridges "has not been under a disability, as defined in the Social Security act, from January 28, 2011, through the date of [the ALJ's] decision." *Id*.

## V. Analysis

Bridges raises two contentions of error: that the ALJ erred in discounting the opinion of Dr. Shirley Jones, her treating physician, and in evaluating Bridges's RFC. Doc. 14 at 6-9. The court rejects both of these contentions and addresses each in turn.

### 1. *Opinion of Dr. Jones*

Dr. Jones opined that Bridges experiences high levels of fatigue and weakness, and can lift five pounds, sit for five hours, and stand/walk for one hour in an eight hour day. (R. 239-243). Bridges maintains that Dr. Jones's opinion supports Bridges's contention that she is disabled, and that the ALJ committed reversible error when she rejected Dr. Jones's opinion. Doc. 14 at 6-7. Generally, "[i]t is well-established that 'the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.'" *Crawford v. Comm'r of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). *See also* 20

C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The Eleventh Circuit instructs that "good cause" exists when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Additionally, the "ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440.

In this case, substantial evidence supports the ALJ's conclusion that Dr. Jones's assessments "are inconsistent with the overall objective medical evidence and his own treatment notes." (R. 25). For example, the record includes an echocardiogram from June 27, 2011 indicating that Bridges's ejection fraction exceeded 55 percent, which demonstrates normal heart functioning. (R. 217). Additionally, a consultative examination on June 28, 2011 revealed that Bridges's cardiovascular, respiratory, and musculoskeletal health, her extremities, grip strength, and overall dexterity were all normal. (R. 224). Indeed, even Dr. Jones's own treatment notes from August 2011 and February 2012 indicate that Bridges's hypertension, congestive heart failure, and chronic kidney disease were "controlled" and "stable" with medications, and include no mention of fatigue, weakness, shortness of breath, or chest pain. (R. 229, 249). In light of this record

evidence, the court concludes that the ALJ did not err in finding that Dr. Jones's opinion is not consistent with objective medical evidence or Dr. Jones's own treatment notes. *See Simone v. Comm'r of Soc. Sec. Admin.*, 465 F. App'x 905, 910 (11th Cir. 2012) (ALJ did not err in rejecting treating physician's opinion where echocardiogram demonstrated an improved ejection fraction of approximately 50 percent, and the treating physician's own letters and treatment notes reported that the claimant's cardiovascular condition was "stable").

### 2. *The ALJ's RFC determination*

Bridges next challenges the RFC determination. Doc. 14 at 7-9. Specifically, Bridges contends that the ALJ (a) failed to consider the effects of obesity on Bridges's ability to work, (b) erred in finding that Bridges can "occasionally kneel and crawl," and (c) failed to consider Bridges's nonexertional capabilities. The court addresses these contentions in turn.[2]

### A. The effects of obesity on Bridges's ability to work

To support her contention that the ALJ failed to address the effects of Bridges's obesity in making the RFC determination, Bridges seemingly offers two arguments. First, Bridges points out that obesity can affect an individual's ability

---

[2] Because the court concludes that the ALJ did not err in her RFC determination, and because Bridges otherwise offers no additional argument suggesting that the ALJ erred at Step Four, the court does not reach Bridges's unsubstantiated contention that "she would readily 'grid' under Medical Vocational Rule (MVR) 201.14 from onset." Doc. 14 at 9. Moreover, the court is confounded by Bridges's assertions that her "work ethic and willingness to work if physically and mentally capable is apparent" and "[a]n Alabama court has found that claimant's prior consistent work history supported his [sic] credibility," *id.*, in light of Bridges's failure to elaborate on those statements or explain their relevance.

to "sustain routine movement and work activity" and exacerbate a cardiovascular impairment, and claims that the ALJ failed to consider these effects in Bridges's case. Doc. 14 and 7-8. This contention overlooks that the ALJ in fact considered Bridges's "movement and work activity" when the ALJ stated: "Although [Bridges] testified she tires easily, she cares for her autistic son daily. She shops, cooks, and does laundry. She also reported cleaning, paying the bills, managing her finances . . . [and] attending church . . . ." (R. 23). The ALJ also pointed out that Bridges "reported she was able to walk around the grocery store for 45 minutes." *Id.* As is evident, the ALJ's opinion specifically addressed Bridges's movement and work activity. Therefore, Bridges's contention is without merit. To the extent that Bridges is claiming that her obesity justifies a different RFC determination, this contention fails also because Bridges does not point to any record evidence to support the claim that her symptoms preclude her from performing work at a light level of exertion. Ultimately, Bridges's own testimony regarding her daily activities, (R. 41-43), the consultative examination confirming that Bridges's strength, her range of motion in most of her body, and her cardiovascular, muscoskeletal, and respiratory health are normal, (R. 220), as well as Bridges's treating physician's treatment notes indicating that her conditions are stable and controlled by medication, (R. 229), militate against a finding that her impairments

inhibit her movement and work activity or exacerbate her cardiovascular health. Therefore, the court rejects Bridges's argument on this issue.

Second, Bridges asserts that "the ALJ failed to persuasively discount treating physician [Dr. Jones's] assessment of fatigue or the consultative physician's impression of exertional dyspnea as well as congestive heart failure . . . *with recurrent flares*" as it relates to the combined effects of Bridges's obesity and other impairments. Doc. 14 at 8-9. Apparently, Bridges's argument is asserting that her "stamina and . . . ability to work on a sustained regular and continuing basis" are limited due to her "sleep apnea in combination with cardiac, renal and vascular conditions together with obesity," that the opinions of Dr. Jones and the consultative physician support this assertion, and that the ALJ, in "fail[ing] to persuasively discount . . . Dr. Jones's assessment . . . and the consultative physician's impression," erred in assessing the effects of Bridges's combined impairments on her ability to work.[3]  *See* doc. 14 at 8. While Dr. Jones indeed

--------

[3] In a related but unsubstantiated contention buried in the text of the "Conclusion" to Bridges's Memorandum of Law, Bridges asserts that the ALJ "erred in failing to alternatively develop the record to obtain an MSO by a medical expert . . . who could review the entire record particularly with regard to the interrelatedness of the impairments of record in combination with obesity." Doc. 14 at 10. To the extent Bridges is arguing that the ALJ should have acquired a "medical second opinion" (perhaps an additional consultative examination) regarding the effects of Bridges's combined impairments on her ability to work, the court disagrees because Bridges has not pointed to any evidentiary gaps in the record suggesting that a second medical opinion was necessary to enable the ALJ to make an informed decision. *See Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (to establish that the ALJ failed to properly develop the record, a claimant must demonstrate "evidentiary gaps which result in unfairness or 'clear prejudice.'"); *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988) (the ALJ must order a consultative examination when "such an evaluation is necessary for [her] to make an informed decision").

opined that Bridges experiences high levels of fatigue, (R. 242), a fact that Bridges
is seemingly suggesting supports her contention that her stamina and ability to
work are limited, the court concludes that the ALJ properly discounted Dr. Jones's
opinion, as explained above. Furthermore, regarding the opinion of the consultative
physician, the ALJ afforded great weight to that opinion and ultimately agreed that
Bridges suffers from severe impairments of exertional dyspnea and congestive
heart failure. (R. 21, 24). Therefore, Bridges's contention that "the ALJ failed to
persuasively discount . . . the consultative physician's impression" is not consistent
with the record. In any case, to the extent that Bridges is asserting the consultative
physician's opinion supports her contention, the consultative physician's findings
do not support the assertion that Bridges's stamina and ability to work are limited.
To the contrary, the consultative examination confirmed that Bridges's overall
cardiovascular, musculoskeletal, and respiratory health were normal, which belies
Bridges's contention that her stamina and ability to work are limited. (R. 222-224).
Ultimately, even accepting Bridges's assertion that obesity together with her other
impairments can limit "stamina and the ability to work on a sustained regular and
continuing basis," doc. 14 and 8, the record contains no medical source suggesting
that Bridges's suffers from this particular symptom (aside from Dr. Jones's
opinion, which the ALJ properly discounted). Therefore, because an acceptable
medical source is required to establish the existence of a limitation, *see Crawford*

*v. Comm'r of Social Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004), the court rejects Bridges's argument.

B. Capacity to "occasionally kneel and crawl"

Turning to Bridges's second contention challenging the ALJ's RFC determination, Bridges asserts that the ALJ's finding that Bridges can "occasionally kneel and crawl" is not based on record evidence because the consultative physician found that Bridges's capacity to squat is "limited to 60 degrees due to ankle pain" and she experiences pain in her left ankle when bearing weight on her heel and toe. (R. 224). However, these assessments by the consultative physician, to which the ALJ afforded great weight, (R. 24), are not inconsistent with a finding that Bridges can "occasionally kneel and crawl" because occasionally kneeling and crawling is not necessarily synonymous with excessively squatting or bearing weight on the heel and toe. Significantly, the record includes a range of motion chart completed by the consultative physician which indicates that Bridges experienced full range of motion of the spine and hips, shoulders, wrists, elbows, and knees, and that her extremities and overall dexterity are normal. (R. 220). This evidence supports the ALJ's finding that Bridges can occasionally kneel and crawl. Therefore, the court finds no reversible error on this issue.

C. <u>Nonexertional symptoms</u>

Finally, regarding Bridges third contention that "the ALJ avoided any consideration that the [nonexertional] symptoms associated with her conditions in combination might affect concentration and ability to tolerate work stresses," doc. 14 and 9, beyond stating that her symptoms "might" affect her concentration and stress levels, Bridges does not elaborate on this contention by pointing to any record evidence or citing to any legal authority. Accordingly, Bridges has waived this issue. *See Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (finding that the claimant waived his argument that the ALJ failed to account for exertional impairments because he "did not elaborate on [the] claim or provide citation to authority").

## VI. Conclusion

Based on the foregoing, the court concludes that the ALJ's determination that Claimant is not disabled is supported by substantial evidence, and that the ALJ applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. A separate order in accordance with the memorandum of decision will be entered.

**DONE** the 1st day of December, 2014.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE